**Jim LOWENBERG, on Behalf of Himself and all Others Similarly Situated, Petitioner,**

v.

**CITY OF DALLAS, Respondent.**

No. 06–0310.

Supreme Court of Texas.

March 28, 2008.

Rehearing Denied Sept. 26, 2008.

John T Cox III, Richard A. Smith, Lynn Tillotson & Pinker, L.L.P., Robert M. Nicoud, Olson Nicoud & Gueck, L.L.P., Russell James DePalma, Greenberg Traurig, LLP, Dallas, for Petitioner.

James B. Pinson, Barbara E. Rosenberg, Asst. City Attys., Thomas P. Perkins Jr., City Attorney's Office, Dallas, Mark E. Goldstucker, Brown & Hofmeister LLP, Richardson, for Respondent.

PER CURIAM.

During the first nine months of 1995, the City of Dallas charged a fee on commercial buildings to generate funds for fire protection services. Failure to pay the fee carried a criminal fine of up to $2,000. Threatened with that penalty, petitioner Jim Lowenberg paid his fee of $80 and then sued for a refund for himself as well as all others who paid the fee, alleging that the fee was an unlawful occupation tax. The trial court certified a class and granted the class's motion for summary judgment. The court of appeals reversed, holding that as a matter of law, the fee was an unlawful tax but that recovery was barred by the voluntary payment rule because the tax was not paid under duress. 187 S.W.3d 777 (Tex.App.-Eastland 2006). We reverse the court of appeals' judgment and affirm the trial court's judgment.

Dallas Ordinance 22206 required, effective January 1, 1995, a certificate of registration "to own, operate, or control a commercial building within the city." To obtain a certificate, good for one year, a person submitted an application disclosing certain basic fire safety information related to the property (such as type of business, any hazardous operations, fire safety protection features, and unique aspects of the building) and paid a "fire registration fee" ranging from $70 to $2,150, depending on the building's square footage. The Ordinance provided that a person lacking the required certificate committed a criminal offense punishable by a fine of up to $2,000. City of Dallas, Tex., Ordinance 22206, § 5 (Sept. 28, 1994) (adopting Dallas, Tex., Code ch. 16, art. 5, §§ 5.101–.108).

According to the City, the Ordinance "established a fire safety registration program ... to improve fire prevention and suppression services and thus to reduce loss of life and property to fire." Brief in Response of the City of Dallas at 2. The purpose of the fee was "to recover ... the costs of fire prevention services to commercial properties that had previously been funded by general revenue [and] the additional commercial-property-related costs of obtaining and administering fire registration information." Id. at 3. "The Program was instituted to provide better fire prevention services for commercial buildings and, consequently, increased fire protection for the citizens of the City." Id. at 35.

Notice of the registration fee generated such a public outcry that the City cut the fees in half before the Ordinance even took effect and then repealed the Ordinance altogether, effective October 1, 1995. But the City did not refund fees already collected or cease collecting fees due while the Ordinance was in effect. Lowenberg submitted a registration application for his commercial building but did not pay the $80 fee. By letter dated May 14, 1996, the City requested payment of the fee, warning that "[v]iolators will be issued citations ... and, upon conviction, will be subject to fines up to $2,000." Lowenberg still did not pay. In February 1997, he was cited to appear in municipal court. He paid the fee, and in return, the charge was dismissed.

Lowenberg paid under protest, but the City had no protest procedures, so on July 28, 1997, he sued in federal court for a refund. In the fall of 1998, the federal court dismissed some of Lowenberg's claims for want of subject matter jurisdiction and allowed him to dismiss others

without prejudice. *Brewster v. City of Dallas,* No. 3:97–CV–1824–D (N.D.Tex. Nov. 24, 1998), (see also *Brewster v. City of Dallas,* 1998 U.S. Dist. LEXIS 16013, 1998 WL 713243, at *4 (N.D.Tex. Sept. 30, 1998)) (Fitzwater, J.). Lowenberg then brought this class action, alleging the registration fee was an unconstitutional taking in violation of his state and federal constitutional rights, and was an occupation tax in violation of Article VIII, Section 1(f) of the Texas Constitution. The district court certified a class, which was affirmed on interlocutory appeal. *City of Dallas v. Brewster,* No. 05–00–00335–CV, 2000 Tex. App. LEXIS 7846, 2000 WL 1716508 (Tex. App.-Dallas Nov. 17, 2000, no pet.) (not designated for publication). Eventually, the trial court granted summary judgment, declaring that the fee was an illegal occupation tax, that persons who paid the fee on or after July 28, 1995 (some 19,000 in all) were entitled to a refund, that claims for payments before that date were barred by limitations, and that the refund totaled $1,009,751.25. After a bench trial on attorney fees, the trial court awarded the class $289,894.00 in attorney fees against the City. In January 2003, the trial court rendered final judgment for the plaintiffs for refunds, prejudgment interest, and attorney fees totaling $1,847,454.36. The court also awarded class counsel thirty percent of the common fund (total refunds plus attorney fees assessed against the City) as attorney fees from the class.

The court of appeals reversed, holding that all claims were barred by limitations, *City of Dallas v. Lowenberg,* 144 S.W.3d 46 (Tex.App.-Eastland 2004), but we disagreed and remanded the case for consideration of other issues raised that had been raised. *Lowenberg v. City of Dallas,* 168 S.W.3d 800 (Tex.2005) (per curiam). On remand, the court of appeals unanimously concluded that as a matter of law, the registration fee was an unlawful tax, but

held, with one Justice dissenting, again as a matter of law, that the fees were not paid under duress and therefore recovery was barred by the voluntary payment rule. The court rendered judgment for the City, except that it remanded for a determination whether plaintiffs should still be awarded attorney fees under the Declaratory Judgment Act. 187 S.W.3d 777. Lowenberg and the class petitioned for review. The City also filed a petition for review, but only conditionally, challenging the remand on attorney fees.

The City argues that the registration fee was not an unlawful tax, but we agree with the court of appeals that it was. Article VIII, Section 1(f) of the Texas Constitution provides that an "occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business." Lowenberg contends that the registration fee was really a tax on the business of owning, operating, or controlling a commercial building, and since the State levies no such tax, the fee was constitutionally prohibited. The only issue argued by the parties is whether the registration fee was a regulatory charge or a tax.

In *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896, 899 (1937), we explained:

It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure. The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose

appears to be that of regulation, then the fees levied are license fees and not taxes.

Although the registration fee in the present case was intended to offset the administrative costs of collecting fire safety information on commercial buildings and incorporating it in a database used in fire prevention efforts, clearly regulatory efforts, the City acknowledges that the fee was also intended to raise enough revenue to cover all costs of fire prevention in commercial buildings, shifting that burden off the taxpayers. Further, as noted above, the City concedes that the fee was to benefit the general public by improving fire protection for everyone. The court of appeals concluded that "the owners and operators of commercial buildings were essentially paying for all of the City's fire prevention services." 187 S.W.2d at 780. We do not think the record can fairly be read to support that broad statement, although there is some ambiguity in the testimony of a fire official. But even if the fee was intended to be used only for fire protection of commercial buildings, the revenue generated greatly exceeded any regulatory cost. We have little trouble concluding that the fee was a tax. Though the City is a home-rule municipal corporation with broad powers of self-government, *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex.1986); TEX. CONST. art. XI, § 5, it cannot impose regulatory fees that are really taxes prohibited by the Constitution.

■ But "[a] person who pays a tax voluntarily and without duress does not have a valid claim for its repayment even if the tax is later held to be unlawful." *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876 (Tex.2005). The voluntary payment rule protects the government from "threats to ... financial security that can arise from unpredictable revenue shortfalls" and "supports the age-old policies of discouraging litigation with the government." *Id.* at 876–77. The court of appeals held that, as a matter of law, class members' payment of the registration fee was not under duress because:

The ordinance in this case did not otherwise impact business operations, the right to do business, the building premises, or the title to the real property.

In light of the public policy considerations, the terms of the ordinance, and the options available to challenge the fee, we cannot hold that the possibility of being fined up to $2,000 constitutes the type of duress that would "interfere with another person's exercise of free will and judgment."

187 S.W.3d at 782. The court quoted *Bolton's* observation that "[a] common element of duress in all its forms ... is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." 185 S.W.3d at 878–79. But *Bolton* dealt only with economic duress. The court of appeals focused too narrowly on whether the threat of a $2,000 fine posed a financial hardship and failed to consider that nonpayment of the registration fee was a criminal offense, a Class C misdemeanor. *See* TEX. PENAL CODE § 12.41(3). We did not consider duress from criminal penalties in *Bolton*, but we did in *Hoefling v. City of San Antonio*, 85 Tex. 228, 20 S.W. 85 (1892). There, a butcher business paid an unlawful occupation tax under protest only after the city initiated criminal proceedings. We held that the business could recover the tax paid:

If appellants had voluntarily paid the sum claimed as a tax, then they would not be entitled to recover it; but they paid it upon coercion, after the institution of criminal proceedings against

them, and under the agreement of the parties are entitled to recover the sum so paid, together with costs incurred in all the courts.

*Id.* at 89.

The rule in *Hoefling* applies here. Although Lowenberg was actually cited with a criminal charge, as was the taxpayer in *Hoefling,* payment was coerced not by the citation but by the Ordinance itself, which made nonpayment criminal: "A person *commits an offense* if he owns, operates, or controls a commercial building in the city without a valid certificate of registration issued under this article." (Emphasis added.) The City argues that the mere threat of criminal charges should not be held to have coerced payment of the registration fee when Lowenberg could have sued for injunctive or declaratory relief to avoid payment. The City points to our suggestion in *Bolton* that such relief could provide the pre-deprivation remedy necessary to satisfy due process. *Bolton,* 185 S.W.3d at 881 n. 9. But we expressly noted in *Bolton* that the voluntary payment rule and constitutional due process are not the same. While the availability of injunctive or declaratory relief might prevent the assessment of an unlawful tax from being a denial of due process, the failure to pursue such relief before paying an unlawful tax does not render the payment voluntary so as to defeat a claim for refund; otherwise, since such relief is almost always available, the voluntary payment rule would be essentially an absolute bar to refund.

The voluntary payment rule encourages resolution of disputes over an assessment before it is paid and the collector has relied on possession, especially when the collector is the government and the stability of the public fisc is at stake. It is better for the government to know that revenue is unavailable than it is to make

refunds after budgets have been drawn and expenditures authorized. In the present case, however, it is not clear whether any action could have been brought to stop collection of the registration fee before the City repealed it. The City collected some $1.7 million in fees and $50,000 in fines during the nine months the Ordinance was in effect. In these circumstances, we think that as a matter of law, class members did not fail to avail themselves of other relief so that their payment of the registration fee was voluntary, barring refund.

The trial court awarded attorney fees against the City under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM.CODE § 37.009. The City contends this was error for two reasons. First, it argues that the plaintiffs were not entitled to relief under the DJA when they had a mature takings claim. But the City pointedly does not argue that the plaintiffs could have succeeded in recovering on their mature takings claim with the same proof that established their claim to a declaratory judgment, and we are not inclined to speculate on the matter. Second, the City argues that the declaratory judgment claim was mooted by the class member's voluntary payments followed by the repeal of the registration fee. But the City cannot extract millions in unlawful fees and fines, decide the whole thing was a mistake, keep the money, and insist the whole matter is moot. For those who paid, the controversy remains real.

Accordingly, we grant the parties' petitions for review and, without hearing oral argument, TEX. R. APP. P. 59. 1, reverse the judgment of the court of appeals and render judgment in accordance with the judgment of the trial court.